The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner; the appealing party has shown no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Deputy Commissioner's Opinion and Award.
 ***********
Defendants filed a motion to dismiss predicated on the failure of plaintiff to file a proper Form 44 and brief. The Commission recognizes that plaintiff's counsel has withdrawn and that plaintiff, thereby, was representing herself in this appeal. The Full Commission, therefore, suspends the Form 44 and briefing requirement for this plaintiff, in this proceeding, and denies defendants' motion.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The plaintiff was employed by defendant at all relevant times and both parties are bound by the Workers' Compensation Act.
2. The plaintiff has filed a previous claim or claims with the North Carolina Industrial Commission for an occupational disease or diseases, which records speak for themselves.
3. Reliance National Indemnity Company was the carrier on the risk. Crawford Company was the servicing agent. The Pre-Trial Agreement dated August 17, 2000 which was submitted by the parties is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff, who was fifty years old on the date of the evidentiary hearing and a high school graduate, began working for defendant-employer in September 1979. During the course of her employment, she held a number of different jobs at the textile mill, including texturing doffer, systems monitor, tube burnisher, texturing overhauler, loom inspector and weave clerk.
2. In approximately 1990 plaintiff began to have problems with her shoulders, arms and hands. She was working as a tube burnisher at the time and had to hold cardboard yarn tubes in a machine while the machine cleaned them. Due to her symptoms, she was moved to a different job of texturing operator which involved monitoring four to five machines, tying broken yarn ends together and doffing the completed packages. After performing this job for about two years, she became a loom inspector. In that position she examined cloth for defects. She did this job for five to six years but would periodically fill in for the weave clerk who would be on leave for extended periods of time.
3. In August 1998 plaintiff became the weave clerk. Her job involved entering some data into a computer, tearing apart perforated warp tickets, making written entries on the tickets and onto planning sheets, doing some filing, getting the mail and answering the telephone. On or about April 13, 1999 she noticed that she had developed a knot on the back of her right wrist. She was ultimately referred to Dr. Walker, an orthopedic surgeon, for treatment. He examined her on April 20, 1999. At that time she was also complaining of right wrist and arm pain which went up to her shoulder. Dr. Walker noted the knot on her wrist along with swelling along her forearm in the area of the extensor tendons. He diagnosed her with tendonitis and considered the possibly that she might have carpal tunnel syndrome despite the atypical pain pattern, since she did have some paresthesia in the median nerve distribution.
4. Dr. Walker treated plaintiff conservatively with a splint, medication and work restrictions. He ordered nerve tests which were reported to be abnormal, but the findings were not consistent with her symptoms. By May 11 the knot on her wrist and the swelling on her forearm had resolved, so he ordered physical therapy and advised her to only use the splint at night. When he last saw her on June 8, 1999, there were no objective findings on examination so he released her from his medical care.
5. Plaintiff subsequently went to Dr. Brenner, another orthopedic surgeon, with complaints of persistent pain and swelling in her arms and right wrist. He ordered further diagnostic tests and ultimately concluded that she probably did have carpal tunnel syndrome despite the atypical symptoms. On May 29, 2000 he performed surgery to release the right carpal tunnel syndrome in her wrist, and her condition subsequently improved. Although he released her to return to work in July and she did return to work, she developed some recurrent symptoms and went back out of work on the date of the evidentiary hearing.
6. Plaintiff has claimed that the tendonitis and carpal tunnel syndrome for which she was treated beginning in April 1999 constituted an occupational disease. However, neither of her treating physicians supported her claim. She has not proven to have been placed at an increased risk of developing those conditions by reason of her job duties as compared to the general public not so employed. Nor were her job duties proven to have been a significant contributing factor in the development of her hand and arm conditions.
7. Plaintiff has not proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Plaintiff has not proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which was not an ordinary disease of life to which the general public was equally exposed. G.S. § 97-53(13); Booker v. DukeMedical Center, 297 N.C. 458 (1979).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for her tendonitis and carpal tunnel syndrome. G.S. § 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. This claim must, under the law, be and it is hereby DENIED.
2. Each side shall pay its own costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN